UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT WILBURN,

                Petitioner,                Case Number 2:10-cv-14596
                                                    Honorable Arthur J. Tarnow

v.

CATHERINE S BAUMAN,

                Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [Dkt. 6], DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS**

Petitioner Robert Wilburn has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Livingston Circuit Court of one count of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(a), and two counts of second-degree criminal sexual conduct. MICH. COMP. LAWS § 750.520c(1)(a). As a result of his convictions, Petitioner is serving concurrent terms of 10-to-30 years for the first-degree conviction and 10-to-15 years for the second-degree convictions. The petition raises three claims: 1) the prosecutor committed misconduct, 2) Petitioner was denied the effective assistance of counsel at trial, and 3) Petitioner was denied the effective assistance of counsel on direct appeal. See ECF 12, p. 4. The Court will deny the petition because the claims are without merit. The Court will also deny Petitioner a certificate of appealability but grant Petitioner permission to proceed on appeal in forma pauperis.

I. Background

Charges against Petitioner arose from allegations he sexually assaulted an eleven-year-old girl who resided in a house he was renting to the girl's family.

At Petitioner's jury trial, Michelle Adams testified she was the oldest of her mother' six children. Her family lived in a home they rented from Petitioner located across the street from his house. Petitioner had a son, Robert, and Michelle would occasionally go over to Petitioner's house to play with him.

Michelle testified that on March 3, 2006, she was playing with Robert at Petitioner's house. Michelle was sitting on a couch with Petitioner watching Robert play video games. Petitioner offered Michelle five dollars to massage her back. She agreed to do so. After the massage, Petitioner put a blanket over her. He put his hands under her shirt and started rubbing her breasts. He then put his hands under her underwear and put his finger between the folds of skin near her vagina. She was too scared to say anything. Petitioner also placed her hand on the crotch of his pants and made her rub it.

Michelle told Petitioner she was going home to retrieve a movie that her mother had borrowed from Petitioner. Instead, she told her mother what happened, and her mother drove her to the hospital. At the hospital, a rape kit was performed, and officers arrived.

Patricia Crane testified she was the nurse who conducted the rape kit. Crane reiterated Michelle's story: Petitioner had paid for a massage, he felt her breasts, he asked her to feel his "private parts," and he put his fingers in her "private parts." Crane did not observe an injury to the vaginal area and no medical treatment was necessary.

On March 5, 2007, Petitioner was interviewed at a police station. Petitioner recalled that he had his son over for the weekend and had fallen asleep on the couch during the time in question. He

2

said that he when he awoke, Michelle was lying with her head in his lap, her hand was on his pants over his penis, and his own hand was close to her breasts. Michelle quickly got up from the couch and went home. Petitioner testified Michelle's mother had probably directed Michelle to do this because the lease was set to expire.

Elizabeth Stahl conducted a forensic interview of Michelle. During the interview, Michelle said Petitioner put his hand over her mouth during the encounter, a detail Michelle had not told the nurse or police.

Lu Ann Curl, the complainant's step-grandmother, testified for the defense that she thought Michelle was a liar. She testified she heard a conversation between her husband and Michelle that Michelle's mother had her falsify allegations in order to obtain money from Petitioner, and Michelle admitted during the conversation the allegations were a lie. Lu Ann's husband, Mitchel Curl, corroborated Lu Ann's testimony.

Michelle testified in rebuttal that her mother and the Curl's were unhappy with each other. She denied making statements to Mitchel that her mother told her to fabricate the story. She testified Mitchell asked her about the allegations, she replied they were true, and she told him to stop asking about it.

The jury found Petitioner guilty of one count of first-degree criminal sexual conduct and two counts of second-degree criminal sexual conduct. Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals, raising the following claims:

> I. The trial court abused its discretion by overruling Defendant's objection to the admission of evidence of statements made by complainant to Patricia Crane (a "sexual assault nurse examiner"), the court holding that the evidence was admissible pursuant to the "medical treatment exception," MRE 803(4).
>
> II. The trial court erred by denying Defendant's request to add the phrase "in light of all the evidence in this case" at the end of its instruction to the jury that "it is not

necessary that there be evidence other than the testimony of Michelle Adams if that testimony proves guilty beyond a reasonable doubt."

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. *People v. Wilburn*, No. 286019, 2009 WL 3930533, at *1, (Mich. Ct. App. Nov. 19, 2009). Petitioner did not appeal this decision to the Michigan Supreme Court.

Petitioner then returned to the trial court and filed a motion for relief from judgment, raising the following claims:

> I. Defendant was denied the effective assistance of counsel for failing to investigate and call key witnesses and failing to object to improper closing arguments by the prosecution.
>
> II. The prosecutor committed misconduct when she argued facts not in evidence during closing, misstated evidence to the jury, and denigrated the defense.

The trial court denied the motion for relief from judgment, finding that the claims lacked merit. *People v. Wilburn*, No. 07-16545 FC, Order (Livingston County Cir. Ct. Sept. 29, 2011). After the trial court denied the motion for relief from judgment, Petitioner filed an application for leave to appeal in the Michigan Court of Appeals. The Michigan Court of Appeals denied the application for leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *People v. Wilburn*, No. 307971 (Mich. Ct. App. Mar. 26, 2012). Petitioner applied for leave to appeal this decision in the Michigan Supreme Court but was also denied relief under Rule 6.508(D). *People v. Wilburn*, 493 Mich. 890 (2012) (table).

## II. Standard of Review

This habeas petition is reviewed under the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). Under AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless the state adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1), (2).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86 (2011), (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87 (internal quotation omitted).

To obtain relief under § 2254(d)(2), a petitioner must show an unreasonable determination of fact and that the resulting state court decision was "based on" that unreasonable determination. *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2012).

### III. Discussion

A. Prosecutorial Misconduct

Petitioner first claims that the prosecutor committed misconduct during closing argument. The claim was raised in Petitioner's motion for relief from judgment in the state trial court, and it was denied on the merits. Specifically, the trial court found that none of the challenged remarks were improper.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *Parker v. Matthews*, U.S. , 132 S. Ct. 2148, 2153, 183 L. Ed. 2d 32 (June 11, 2012). In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). This Court must ask whether the Michigan Court of Appeals' decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, U.S. at , 132 S. Ct. at 2155, (quoting *Harrington*, 562 U.S. at 103.

1. Arguing Facts Not in Evidence

Petitioner first asserts that the prosecutor misstated the evidence and otherwise asserted facts that were not presented at trial. Prosecutors must refrain from asserting facts never admitted in

6

evidence. *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000). Prosecutors may, however, "forcefully assert reasonable inferences from the evidence" presented at trial. *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005).

Petitioner complains that during closing argument the prosecutor several times stated that there was "no dispute" that the victim was touched. He argues that the comment was improper because it suggested Petitioner admitted to sexually touching her.

The Court has reviewed the record. The prosecutor stated towards that beginning of her closing argument that "there's really not a dispute that the child's hand touched the Defendant's penis. There's really not a dispute that his hand touched her breasts. . . . even the Defendant says those things happened in a different way which is most beneficial to him." T III, pp. 114-115. Defense counsel objected, stating that Petitioner testified that his hand was "too close for comfort but not touching it." Id. The trial court overruled the objection, finding there was enough evidence to allow it, and he would leave it for argument. Id.

The prosecutor's comment fell within permissible bounds given Petitioner's testimony regarding the incident. Petitioner testified that when he awoke the victim's hand was on his crotch, and that his hand was close to her breast. The defense was that he did not intend to engage in a sexual touching and that he was being set-up by the victim's mother. This was made clear by both his testimony and the testimony of the other defense witnesses, and it was the centerpiece of defense counsel's closing argument. That is, the competing theories at trial–put squarely to the jury by the evidence and arguments–were whether Petitioner molested the victim or whether she set Petitioner up while he was sleeping. There is no likelihood, reading the comment in context and in light of the record as a whole, that the jury would have been misled by this portion of the prosecutor's argument

into believing Petitioner admitted to intentionally touching the victim's breast. See, e.g., *Byrd v. Collins*, 209 F.3d 486, 536 (6th Cir. 2000).

Petitioner also challenges the prosecutor's statements that the victim gave consistent descriptions of what occurred prior to trial, when in fact there were inconsistencies. The record reveals that during the portion of the argument that the prosecutor was arguing for the credibility of the victim, she stated, "Michelle told consistently with what she's told all along. That he touched her breasts, that he took his (sic) hand and put it on her (sic) penis and that he touched her inside of her body in her genital area." T III, p. 117. The prosecutor immediately followed this statement with the fact that defense counsel would point to inconsistencies in the victim's testimony regarding whether Petitioner's son was wearing headphones at the time of the incident, and whether Petitioner placed his hand over her mouth. The prosecutor then argued why these inconsistencies were not important. Accordingly, contrary to Petitioner's allegation, the prosecutor did not argue that the victim's description of the offence was perfectly consistent. Rather, the argument was a fair one to make in light of the trial record.

2. Denigrating the Defense

Petitioner asserts that the prosecutor committed misconduct by criticizing defense counsel's reliance on inconsistencies in the victim's testimony and statements to defend against the charges. Although an attorney must not be permitted to make unfounded and inflammatory attacks on an opposing advocate, a prosecutor's statements in closing argument regarding defense counsel must be viewed in context. United States v. Catlett, 97 F. 3d 565, 572 (D.C. Cir. 1996); *Makidon v. Elo*, 2000 WL 791795, * 8 (E.D. Mich. May 26, 2000). Although prosecutorial attacks on the credibility or motives of defense counsel are not permitted, the prosecutor has the right to comment on a

8

defense counsel's argument during summation. *Mickens v. United States*, 53 F. Supp. 2d 326, 332 (E.D.N.Y. 1999).

The prosecutor here characterized defense counsel's arguments as "muddying the waters" and amounting to "red herrings." In context, the prosecutor was emphasizing the consistency with which the victim told her story and the speed with which she reported the assault as outweighing the attack on her credibility with the use of what she viewed as minor inconsistencies. The prosecutor's comments were not improper because when viewed in context, they attacked defense counsel's arguments, not defense counsel personally. See *United States v. Xiong*, 262 F. 3d 672, 675 (7th Cir. 2001); *United States v. McCarter*, 307 F. Supp. 2d 991, 996 (N.D. Ill. 2004).

Accordingly, the state court did not unreasonably reject Petitioner's prosecutorial misconduct claim.

B. Ineffective Assistance of Trial Counsel

Petitioner's second claim asserts that her trial attorney was ineffective for failing to object to the misconduct described above, and for failing to call additional defense witnesses. Again, this claim was adjudicated by the trial court on the merits. It found that counsel was not ineffective for failing to object, and it found that it was reasonable for counsel not to call the additional witnesses.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words,

9

petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland*, 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

With respect to the first allegation of ineffective assistance, because this Court has found that no misconduct occurred, counsel's failure to object did not result in any prejudice to Petitioner's defense. *Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010) (counsel's failure to make a meritless objection does not constitute ineffective assistance of counsel).

As for Petitioner's second allegation, he asserts that counsel should have called Jennifer Adams, the mother's victim, to cross-examine her on the defense theory that she put her daughter up to the idea to falsely accuse him, and that she owed Petitioner over $2,000 in late rent. He also argues that the victim's father, Ronald Adams, would have testified that Michelle had previously made false allegations of molestation, and that Michelle did not tell him that Petitioner touched her vagina. Lastly, Petitioner alleges that counsel should have called his son because he was in the room when the incident took place.

The trial court discussed each of these allegations and rejected them on the merits. It noted that other defense witnesses were called to support the theory that the victim's mother orchestrated the incident, and that calling Jennifer Adams would have entailed obvious risks because she would be hostile to the defense. The record also indicates that there was a discussion as to whether to call this witness, and that "a lot of perpetration for this witness has been made." T II, pp. 89-92. Defense counsel spoke with Petitioner about the matter and it was decided not to call her. Id.

With respect to the victim's father, the trial court noted that the allegation that the victim made prior allegations was dubious. The record indicated that it was one of the victim's sisters who made an unrelated prior allegation of molestation, and that there was no evidence that the prior allegation was false. TI, pp. 8-9. Furthermore, while the father may not have been told by the victim that Petitioner touched her vagina, she still told him he touched her breast. Accordingly, his testimony would not have been entirely exculpatory. See T I, pp. 153-168.

Finally, the record shows that when Sergeant Kramer was questioned at trial about what Petitioner's son told him, defense counsel successfully objected on hearsay grounds. T I, pp. 237-238. Petitioner has made no evidentiary proffer that his son witnessed the incident or that his testimony would have been favorable to the defense.

The failure to call witnesses can, of course, constitute ineffective assistance of counsel. *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004). The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel, however, only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004). Defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *Millender v. Adams*, 376 F. 3d 520, 527 (6th Cir. 2004).

Here, the trial court reasonably determined that defense counsel was not ineffective for failing to call these three witnesses. There were obvious strategic reasons not to call the mother of the victim, who would have been hostile to the defense, and who may have helped convince the jury her daughter was telling the truth. The decision not to call her was the kind of tactical choice *Strickland* warns against second-guessing. The father of the victim was a mixed-bag. While the victim did not tell him that Petitioner touched her vagina–an opportunity for impeachment–she did

11

tell him about the rest of the incident. In any event, an attempt at impeaching the victim on this point would have risked eliciting a sympathetic explanation from the victim. Again, the decision not to call the father was a tactical call that cannot be second-guessed. Finally, there has been no showing that Petitioner's son would have provided any favorable testimony at all. Accordingly, the state trial court did not unreasonably apply the established Supreme Court standard.

C. Ineffective Assistance of Appellate Counsel

Petitioner claims that his appellate counsel was ineffective for failing to raise on appeal these claims. An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. Because Petitioner's first two claims are meritless, his appellate counsel could not have been ineffective for failing to raise them on appeal. As noted above, counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. See *Smith*, 591 F.3d at 523.

IV. Conclusion

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. ' 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. ' 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing

12

threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing ' 2254 Cases, Rule 11(a), 28 U.S.C. foll.' 2254.

Petitioner has not demonstrated a substantial showing of the denial of a constitutional right with respect to his claims. Accordingly, a certificate of appealability will not issue. The Court will, however, grant Petitioner permission to proceed on appeal in forma pauperis. *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002); 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a).

V

Accordingly, it is ORDERED that the petition for writ of habeas corpus is DENIED.

It is further ORDERED that a certificate of appealability is DENIED.

It is further ORDERED that Petitioner may proceed in forma pauperis on appeal.

        S/Arthur J. Tarnow
        Arthur J. Tarnow
        Senior United States District Judge

Dated: March 25, 2015

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on March 25, 2015, by electronic and/or ordinary mail.

        S/Catherine A. Pickles
        Judicial Assistant